## E. TURGEON CONSTRUCTION COMPANY, INC. *vs.* FELIX ANDOSCIA.

MAY 22, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an employer's petition for review of a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300, as amended. Following a hearing in the superior court the trial justice made certain findings of fact and then ordered that compensation payments be suspended thirty days after the entry of a decree unless respondent within that time submitted to a surgical operation at the expense of petitioner. From a decree thereafter entered in accordance with such decision the respondent has appealed to this court.

The grounds that will support a petition for review are specifically set forth in article III, §13, of the act, as amended by public laws 1941, chap. 1064. Compliance with the provisions of that section is necessary to confer jurisdiction. One of the grounds therein specified is that the employee's incapacity has ended or diminished. In the instant case the petition alleges two grounds: first, the one just mentioned,

which is in accordance with the requirement of §13; and secondly, that the "Employee refuses to submit to prescribed medical treatment," for which we find no authority in that section either in express language or by necessary implication. However, because of unusual circumstances of record and since the respondent did not specifically question the propriety of the alleged second ground for review, we will treat such ground merely as a contention by the petitioner under its first and only valid ground for review stated in the petition, namely, that respondent's incapacity would have ended or diminished but for his failure to follow a prescribed medical treatment for his injury.

It is undisputed that on September 30, 1948, while working for the petitioner as a laborer, respondent accidentally injured his left knee, and that when the case was heard in the superior court he was receiving compensation for total incapacity. It is also clear that up to that time a surgical operation on the knee had neither been prescribed nor even suggested to the respondent. The question of an operation was first raised and made the determinative issue by the petitioner in the superior court. On the erroneous assumption that such issue was properly before the court under its alleged second ground for review, the trial justice made no finding as to whether respondent's incapacity had then ended or diminished. His decision plainly shows that he by-passed that fundamental question and, adopting petitioner's contention, held that compensation payments would be suspended unless respondent submitted to an operation on the knee within thirty days from the entry of a decree in accordance with the decision.

Three doctors testified for the petitioner and none appeared for the respondent. Doctor G. Edward Crane would go no further than to say that the respondent "probably had an internal derangement of his left knee," and he recommended that the knee "be explored" to see what was wrong. Doctor Vincent Zecchini expressed the opinion that the respondent's subjective symptoms were "suspicious of a

deranged semilunar cartilage in the left knee joint" and that *if* on opening the knee such condition were found it could be corrected at that time. Doctor Arthur E. Martin, who expressed no opinion as to the cause of respondent's condition, testified that "assuming" there was something wrong with the semilunar cartilage an "exploratory operation" and the removal of that cartilage could be performed at the same time. Furthermore, all three doctors agreed that the operation suggested by them for the first time at the hearing in the superior court was a "major operation" involving a "calculated" risk to life, that is, a risk that was slight but nevertheless to be taken into consideration; that such an operation, although rather common and ordinarily successful under modern surgical practices, might result in a stiff knee; and that the patient would suffer considerable pain for a relatively short time.

The respondent, who was called as a witness by petitioner, testified among other things that in his then condition he was willing to accept light work which did not require much standing or lifting, such as that of timekeeper or worker in charge of a tool shed; and that he had been unable to obtain such work. It is pertinent to note here that at the time of the hearing in the superior court petitioner, a construction company, did not offer him any such employment, but instead, relying on *Bishop* v. *Frank Morrow Co.*, 68 R. I. 518, was willing to pay all expenses in connection with the operative treatment of the knee hereinbefore described, which issue thus raised became the determinative question in the case. The sum and substance of respondent's testimony on this point was that he was unwilling to submit to an exploratory operation on the knee, although he would consent to an operation "As long as they [the doctors] can assure me that there is going to be no stiff leg remaining after the operation, and I can go to work."

In our judgment the medical evidence as to the real cause of respondent's knee condition rests on assumption or suspicion and not on probability. When the testimony of

all three doctors is read and considered as a whole it is plain that not one of them was ready or willing to commit himself to a definite statement of the probable cause of respondent's condition. Before going to such extent they all suggested that the respondent submit to an *exploratory* operation in order to ascertain whether or not their assumption or suspicion was well founded. If there was no derangement of the semilunar cartilage, no curative operation would follow, in which case the respondent would have exposed himself to danger and suffering without reasonable expectation of probable cure or improvement.

In view of the great uncertainty and vagueness of the medical evidence concerning the probable cause of respondent's condition, the question respecting his obligation to submit to a surgical operation primarily for exploratory rather than curative purposes is quite analogous to the one in *Cranston Print Works* v. *Pascatore*, 72 R. I. 471. In that case we held that an injured employee was not obliged to submit to a myelogram test at the request of the employer for diagnostic purposes. The instant case is even more extreme. Here the doctors merely surmised or suspected that the respondent's knee condition was due to a deranged semilunar cartilage and therefore they suggested that the knee be explored by an operation of the extent herein described to determine the real cause of his disability. If their surmise or suspicion were unfounded no curative operation would have been involved or performed.

On the present record it is clear that fundamentally the respondent was requested by petitioner and for its benefit to submit, against his will, apparently to an *examination* of the knee but in reality to a surgical operation involving risk to life or limb in an attempt to confirm a possible diagnosis. In the peculiar state of the medical evidence presently before us it is our opinion that the respondent was not bound to submit to the suggested operative treatment and that the trial justice committed an error of law in so deciding. We are not here called upon to decide

and therefore we express no opinion as to whether in different circumstances an injured employee should or should not submit to a curative operation for the removal of a deranged semilunar cartilage of the knee.

The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Worrell & Hodge, Paul H. Hodge,* for petitioner.

*John Quattrocchi, Jr.,* for respondent.